Strafford
No. 88-128

## Vassilios A. Xydias

v.

## Davidson Rubber Company & a.

June 28, 1989

*Shaheen, Capiello, Stein and Gordon,* of Dover (*William H. Shaheen* and *Andru H. Volinsky* on the brief, and *Mr. Volinsky* orally), for the plaintiff.

*Ouellette, Hallisey, Dibble and Tanguay P.A.*, of Dover (*Raymond R. Ouellette* on the brief and orally), for the defendants.

BROCK, C.J. The defendants, Davidson Rubber Company and Fireman's Fund Insurance Company, appeal from an order of the Superior Court (*Temple*, J.) sustaining the plaintiff's appeal from the department of labor's termination of workers' compensation benefits. The court found that the plaintiff, Vassilios Xydias, was totally disabled, thus entitling him to benefits of the workers' compensation statute. *See* RSA 281:21, :23, :37-a. Because we conclude that the evidence is sufficient to support a finding of total disability, we affirm.

The plaintiff is a sixty-six-year-old Greek-speaking immigrant whose occupation as a manual laborer ended on March 9, 1982, when he sustained a work-related injury at the plant of the defendant, Davidson Rubber Company, in Dover. The injury resulted in lower back pain which radiated down the plaintiff's left leg. The plaintiff was hospitalized for twenty-three days and began receiving total disability benefits. *See* RSA 281:23. He also received a permanent partial disability award under RSA 281:26 for a 10% disability to his left leg, which is not the subject of this appeal.

The plaintiff initially was treated by his family physician, Peter T. Lampesis, M.D., who later referred him to a trauma surgeon, James T. Demopoulos, M.D. He continued treatment with Dr. Demopoulos until the fall of 1985.

In October, 1985, following a labor department hearing held at the request of the defendant Fireman's Fund Insurance Company, RSA 281:40, the hearing officer determined that the plaintiff was not disabled from gainful employment and terminated his workers' compensation benefits. The basis for this decision was two videotapes, taken by a private investigator, of the plaintiff performing outdoor gardening activities which required various levels of physical exertion, such as pushing and emptying a wheelbarrow, and digging. The plaintiff appealed to the superior court, requesting a full *de novo* hearing.

Evidence admitted at the hearing included the videotapes, medical opinions and testimony of physicians who had examined or treated the plaintiff for his injury. One physician, Dr. Richard L. Levy, examined the plaintiff on behalf of the defendants. Prior to viewing the videotapes, Dr. Levy stated in the report of his examination that the plaintiff was "probably totally and permanently disabled." After viewing the videotapes, Dr. Levy changed his

opinion stating that "no person with Mr. Xydias's subjective complaints could possibly do the activities that [he] observed."

In December, 1985, the plaintiff sought the treatment of Jonathan L. Holzaepfel, M.D., an orthopedic surgeon who also changed his medical opinion after viewing the videotapes. Dr. Holzaepfel testified by deposition that the activities he observed on the videotapes were not consistent with what he would ordinarily expect from a person with the plaintiff's complaints.

Dr. James T. Demopoulos, the trauma surgeon who treated the plaintiff from 1982 until 1985, testified, after viewing the videotapes, that the plaintiff would be able to perform light duty work on a full-time basis but that he probably would have flare-ups two or three times a year when he would be unable to work. Dr. Peter Lampesis, the plaintiff's family physician, also viewed the videotapes. In his deposition he agreed that the plaintiff was capable only of limited work, for one to two hours per day.

The fifth physician, Dr. Harilaos T. Sakellarides, an orthopedic surgeon who examined the plaintiff in September, 1986, testified that the plaintiff was "disabled for any occupation that requires physical exertion," and that he "d[id not] believe [the plaintiff] could carry a heavy occupation of lifting, bending, pushing, heavy manual work." The witness indicated that the plaintiff could perform light work. Although Dr. Sakellarides did not view the videotapes, he was aware of the plaintiff's actions.

Sustaining the appeal from the decision of the labor department, the superior court found that although the videotapes resulted in a substantial change in the evaluations of three examining physicians, Doctors Lampesis and Sakellarides "continue to be of the opinion that the petitioner cannot perform gainful employment." The court further found that although the plaintiff "appears to over-state his condition on occasion," and he "attempt[s] to do some physical work around his home," it did not lead the court to conclude that "his disability [was] any less than that determined by the Department, on June 6, 1984, when he was awarded permanent partial disability."

The defendants argue that the trial court erred in finding the plaintiff totally disabled and failed to take into consideration the totality of all of the evidence from all five physicians. Our standard of review in this case is well settled. "The trial court's determination as to the existence of an injury suffered by a claimant and the extent of the disability resulting therefrom are questions of fact that will not be disturbed if there is competent evidence in the record from which that decision could reasonably

be made." *City of Rochester v. Smith*, 119 N.H. 495, 496, 403 A.2d 421, 422 (1979); *Talbot v. Catelli-Habitant, Inc.*, 122 N.H. 517, 519, 446 A.2d 858, 859 (1982); *Lessard v. City of Manchester Fire Dep't*, 118 N.H. 43, 46, 382 A.2d 365, 367 (1978). The defendants contend that it was unreasonable and an abuse of discretion for the trial court to disregard the testimony of three physicians and to ascribe conclusions to the testimony of Doctors Lampesis and Sakellarides not contained therein. We agree with the defendants' assertion that these two physicians did not state specifically that the plaintiff could not perform gainful employment; in fact, they indicated in their testimony that the plaintiff was physically capable of doing some sort of light work. A finding of total disability, however, does not rest literally upon a determination of "utter and abject helplessness." 2 A. LARSON, THE LAW OF WORKMEN'S COMPENSATION § 57.51(a) (1987). New Hampshire, along with the majority of jurisdictions, follows the rule that "[i]f an employee cannot perform services other than those which are so limited in quality, dependability, or quantity that a reasonably stable market for them does not exist, he may well be classified as totally disabled." *Servetas v. King Chevrolet-Oldsmobile Co.*, 117 N.H. 1061, 1064–65, 381 A.2d 750, 752 (1977) (citing *Armstrong v. Lake Tarleton Hotel*, 103 N.H. 450, 453, 174 A.2d 410, 413 (1961)). Further, we have stated that "a finding that a person may be able to do part-time work does not necessarily rule out a finding of temporary total disability nor require that it always be reduced to partial disability." *Servetas, supra* at 1064, 381 A.2d at 752.

We agree with the trial court that, although the evidence revealed that the plaintiff was able to perform physical tasks which exceeded his statements to physicians, this did not preclude a finding of total disability. The record amply supported a finding that the plaintiff was physically disabled and could not perform any heavy manual labor.

 Evidence that the defendant apparently spoke little or no English, that he was sixty-four years old at the time of the superior court hearing, that he had only an elementary school level education, that he was a manual laborer, and that he could perform only light work for limited time periods, supported the court's finding that he was totally disabled in terms of employability and earning capacity. "'Inability to get work, traceable directly to a compensable injury, may be as effective in establishing disability as inability to perform work.'" *Armstrong, supra* at 453, 174 A.2d at 413 (quoting 2 A. LARSON, THE LAW OF WORKMEN'S COMPENSATION § 57.61(a) (1987)). Moreover, we reject the defendants'

argument that the court failed to consider the totality of the evidence from all five physicians. As trier of fact, it was within the trial court's sound discretion to credit or discredit the testimony of expert witnesses. *See Condiles v. Waumbec Mills*, 95 N.H. 127, 129, 58 A.2d 726, 728 (1948); *see also Wheeler v. School Admin. Unit 21*, 130 N.H. 666, 672, 550 A.2d 980, 984 (1988). We hold, therefore, that there was competent evidence to support the trial court's finding that the plaintiff was totally disabled. *See* RSA 281:23.

Because of our holding, we reject the defendants' further argument that the court erred in failing to rule upon whether the plaintiff was partially disabled. *See* RSA 281:25. We note, however, that a finding of total disability pursuant to RSA 281:23 entitles a recipient to benefits only so long as the period of total disability continues. Since the repeal of RSA 281:24, providing for "Compensation for Permanent Total Disability," the workers' compensation statute does not distinguish permanent total disability from temporary total disability. *See* RSA 281:23, :24.

We also dismiss the defendants' argument that the trial court erred in not ruling upon Davidson Rubber Company's request for findings of fact submitted after the deposition of Dr. Demopoulos. These findings involved an interpretation of Dr. Demopoulos' testimony, to the effect that the plaintiff was not totally disabled. Although the trial court did not rule upon these findings, it is clear that the court considered Dr. Demopoulos' opinion in making its decision. The court's order states that after the viewing of the videotapes, three doctors who had examined and/or treated the petitioner, one of whom presumably was Dr. Demopoulos, "substantially changed their evaluations as to the petitioner's condition." Thus, even a favorable ruling on the defendant's request would not have changed the outcome. Accordingly, any error was harmless. *See Place v. Place*, 129 N.H. 252, 260, 525 A.2d 704, 709 (1987).

*Affirmed.*

All concurred.