Department of Labor
No. 96-667

## APPEAL OF FRED FULLER OIL CO., INC.

### (New Hampshire Department of Labor)

January 31, 2000

*Leeming & Leeming,* of Concord (*Simon C. Leeming* on the brief and orally), for the petitioner.

*Soule, Leslie, Kidder, Zelin, Sayward & Loughman,* of Salem (*Diane M. Gorrow* on the brief and orally), for the respondent.

HORTON, J. The petitioner, Fred Fuller Oil Company, Inc., (Fuller Oil) appeals the decision of the New Hampshire Department of Labor (DOL) ruling that it violated the Whistleblowers' Protection Act (Act), RSA 275-E:2 (1999), when it discharged the respondent,

Barry S. Leonard, Sr. The DOL ruled that Fuller Oil illegally fired Leonard for reporting what he reasonably believed was a violation of the law. *See* RSA 275-E:2, I(a). We vacate and remand.

From November 1992 until his discharge on January 12, 1996, Leonard was employed by Fuller Oil as a fuel-oil delivery driver. Throughout December 1995 and early January 1996, Leonard worked in excess of sixty hours per week due to harsh weather conditions, which had increased the demand for fuel oil. On January 10, 1996, the Federal Highway Administration of the United States Department of Transportation declared a regional emergency pertaining to the transportation of heating fuels in New Hampshire, thereby suspending certain maximum driving-time limitations for fuel-oil delivery drivers. *See* 49 C.F.R. § 390.23 (1998). Also on that date, Fuller Oil posted a notice at Leonard's place of employment indicating that the company needed volunteer fuel-oil delivery drivers on Sunday, January 14, 1996. The notice did not mention the state of emergency.

On January 12, 1996, a supervisor informed Leonard that all employees would be required to work on January 14 and that any questions should be directed to the president, Fred Fuller. Later that afternoon, Leonard contacted Fuller to inform him that he could not work on that day. At the DOL hearing, Leonard testified:

> . . . I told [Fuller] I need a day off, I was tired. My wife was coming down with another MS attack where her eyes get blurry and she was getting really stressed out from all the hours I was working and I need to spend some time with her and I had also planned a snowmobile trip for that Sunday afternoon.

Leonard further testified that after he stated that he would not work on Sunday, Fuller told him that if he refused to work on Sunday, he should return the truck and he would be fired. Shortly thereafter, Leonard dropped off his truck and did not return to work.

On March 7, 1996, Leonard filed a whistleblowers' complaint with the DOL, *see* RSA 275-E:4, I (1999), alleging that Fuller Oil wrongfully discharged him for reporting its violation of laws and regulations limiting the number of hours commercial drivers may work. *See* RSA 275-E:2, I(a).

After hearing, the DOL issued a decision including findings that Fuller Oil had: (1) violated statutory and regulatory provisions regarding ill or fatigued commercial drivers and the mandatory "day of rest" for commercial drivers; and (2) discharged Leonard for his refusal to deliver oil on January 14. The DOL ruled that Fuller Oil had violated RSA 275-E:2 by discharging Leonard for

reporting what he believed to be Fuller Oil's violations of law. The DOL reinstated Leonard's employment with Fuller Oil retroactive to January 12, 1996, and ordered the payment of all past wages and fringe benefits and restoration of seniority rights.

On appeal, Fuller Oil argues that the DOL erred in: (1) finding that Fuller Oil required Leonard to "execute a directive which . . . violates any law or rule," RSA 275-E:3 (1999); (2) ruling that Leonard was terminated for "reporting" a violation when the purported report did not include a reference to a "violation of any law or rule," RSA 275-E:2, I(a); (3) ruling that Fuller Oil violated the Act when Leonard had not satisfied the factual predicates necessary to invoke its protections, *see* RSA 275-E:2, II, :4, I; and (4) denying rehearing pursuant to RSA 541:3 (1997). Fuller Oil also argues that the decision of the DOL was clearly unreasonable, unlawful, and unjust.

We will not set aside an order of the DOL except for errors of law, unless we are satisfied, by a clear preponderance of the evidence, that such order is unjust or unreasonable. *See* RSA 541:13 (1997). The agency's findings of fact are deemed *prima facie* lawful and reasonable. *See id.* "This presumption may be overcome only by a showing that there was no evidence from which the [agency] could conclude as it did." *Appeal of Briand,* 138 N.H. 555, 558, 644 A.2d 47, 49 (1994).

We begin our analysis with the observation that, as it relates to this case, the Act protects two distinct activities on the part of employees. RSA 275-E:2, I(a) (section two) prohibits an employer from terminating an employee who *reports* what the employee reasonably believes is illegal activity. RSA 275-E:3 (section three) prohibits an employer from terminating an employee who *refuses* to follow an illegal directive.

Leonard brought his complaint against Fuller Oil under section two, alleging that he was fired for reporting Fuller Oil's violation of statutes and regulations limiting the number of hours a commercial driver may work. The DOL hearing officer who heard the case expressly decided the case under section two, concluding that Leonard "was illegally discharged as a result of his reporting of what he reasonably believed was a violation of the law." The hearing officer's primary findings, however, related to section three: "[T]he claimant . . . was actively discharged for his failure to make fuel oil deliveries in violation of RSA 275:33 [(1999) (the 'day of rest' statute)] and [49 C.F.R. § 392.3 (1998) (the federal 'ill or fatigued operator' regulation)]."

Leonard conceded at oral argument that he brought his complaint below exclusively under section two and that he had raised issues relating to the illegality of Fuller Oil's actions only to establish his "reasonable cause to believe" that the actions he reported were, indeed, violations of the law. RSA 275-E:2, I(a). In light of this concession and the fact that Leonard did not complain of a section three violation below, we need not address Fuller Oil's first argument.

Fuller Oil's second argument is that Leonard's complaint to Fred Fuller did not constitute a "report" under section two, which provides, in pertinent part:

> I. No employer shall discharge, threaten, or otherwise discriminate against any employee regarding such employee's compensation, terms, conditions, location, or privileges of employment because:
> (a) The employee, in good faith, reports or causes to be reported, verbally or in writing, what the employee has reasonable cause to believe is a violation of any law or rule adopted under the laws of this state, a political subdivision of this state, or the United States . . . .

RSA 275-E:2, I.

Fuller Oil contends that Leonard's subjective complaints to Fuller, without reference to any "violation of any law or rule," do not constitute a "report" under section two. According to Fuller Oil, although citation to a particular statute or regulation is not necessary, an employer must be put on notice that the employee is blowing the whistle by objective reference to violation of a law. Leonard, on the other hand, maintains that an employee is not required to refer to a violation of the law, but rather satisfies the requirements of a report if he or she raises a concern that implicates a law. Thus, Leonard argues that his statement to Fuller, "I need[ed] a day off, I was tired," is sufficient to constitute a report under RSA 275-E:2, I(a).

The Act does not define what constitutes a "report," nor have we previously been called upon to decide its parameters. The statute does not expressly require a reporting employee to cite to the alleged violation, and a survey of jurisdictions employing whistleblower protection statutes similar to our own reveals no requirement that an employee's report include such a reference to a violation of law. *See, e.g., Marques v. Fitzgerald*, 99 F.3d 1, 6 (1st Cir. 1996) (jury could find that employee's safety complaints, which did

not include reference to a violation, constituted a report under Rhode Island's whistleblower protection statute). Indeed, to impose such a requirement would exclude an unsophisticated employee from the protections of the Act simply because he or she failed to invoke a specific law that the employer has allegedly violated. We conclude that the better approach is to presume that an employer is familiar with the laws and regulations governing its business and to consider a report to have been made if a reasonable employer would have understood from an employee's complaint that the employee was reciting a violation of law.

Having clarified the standard for "reporting" under section two, we now turn to the question of whether the hearing officer properly determined that Fuller Oil violated section two and conclude that he did not. Although explicitly concluding that Fuller Oil violated section two of the Act, the hearing officer made findings which support only a section three violation. He found that Fuller Oil discharged Leonard for "failure to make fuel oil deliveries," but made no factual findings supporting his conclusion that Fuller Oil discharged Leonard for reporting what Leonard believed to be Fuller Oil's violation of the law. Specifically, the hearing officer made no finding that Leonard *reported* violations to Fuller Oil. Nor did he make findings to support a determination that Leonard's termination *resulted from* his report. *See* RSA 275-E:2, I (requiring that the discharge be "because: . . . [t]he employee . . . reports . . . a violation"); *accord Marques*, 99 F.3d at 4 (construing Rhode Island statute to require that "an employee must demonstrate that there was a causal connection between the report and the termination"); *Bard v. Bath Iron Works Corp.*, 590 A.2d 152, 154 (Me. 1991) (noting that a *prima facie* case of retaliation in violation of Maine statute requires causal link between the employee's reporting and the termination).

■ Because the hearing officer failed to make findings that Leonard reported what he reasonably believed to be violations and that Fuller Oil discharged Leonard as a result of Leonard's reporting, we vacate the DOL's decision and remand for such further proceedings as the DOL should deem necessary.

Fuller Oil next argues that the hearing officer erred in concluding that Fuller Oil violated section two when Leonard had not satisfied the factual predicates of a claim under that section. RSA 275-E:2, II provides that an employee is not entitled to the protections of section two "unless the employee first br[ings] the alleged violation to the attention of a person having supervisory authority with the

employer, and then allow[s] the employer a reasonable opportunity to correct that violation."

As explained in *Appeal of Bio Energy*, 135 N.H. 517, 607 A.2d 606 (1992), the Act contemplates a series of events: notice to the employer of a violation; followed by an opportunity for the employer to remedy the violation; and, ultimately, if necessary, report of the violation to a higher authority. *Id.* at 519-21, 607 A.2d at 608-09. In that case, we concluded that in order "to promote the dual purposes· of the Act — to encourage employees to come forward and report violations without fear of losing their jobs and to ensure that as many alleged violations as possible are resolved informally within the workplace," the employee is protected at the time he or she "begins the process of complying with the Act, as specified in RSA 275-E:2, II." *Id.* at 521, 607 A.2d at 609.

■ In the case before us, Leonard complained to Fred Fuller, the president of the company, unquestionably a "person having super-visory authority with the employer," as required by RSA 275-E:2, II. He thus began the process of complying with the Act, thereby availing himself of its protections. *See id.* The fact that he was terminated immediately, before being able to complete the process, does not justify the withholding of the Act's protections here any more than it did in *Appeal of Bio Energy*. We therefore conclude that Leonard satisfied the requirements of RSA 275-E:2, II.

Fuller Oil also argues that Leonard did not satisfy the require-ments of RSA 275-E:4, I, which provides that an employee seeking a DOL hearing under either section two or section three must "first ma[ke] a reasonable effort to maintain or restore such employee's rights through any grievance procedure or similar process available at such employee's place of employment." Fuller Oil contends that although the hearing officer found that "the employer had no written grievance procedure," such finding is not dispositive of the issue of whether there existed "any grievance procedure or similar process" in light of testimony regarding Fuller's "open door policy."

Because we remand on other grounds, we need not determine whether the hearing officer's findings on this issue are sufficient. Upon remand, the hearing officer may make further findings and rulings with respect to whether Leonard satisfied his obligations under RSA 275-E:4, I.

In light of our disposition of this case, we need not address the parties' further arguments.

*Vacated and remanded.*

All concurred.